**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BROOKS TURNER,<br>*Plaintiff*,<br><br>v.<br><br>CONNECTICUT DEPARTMENT OF<br>CORRECTION and HELENA MORRIS,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>) | 3:25-CV-01622 (SVN)<br><br><br><br><br><br>September 25, 2026 |

**RULING AND ORDER ON MOTIONS TO DISMISS**

Sarala V. Nagala, United States District Judge.

Plaintiff Brooks Turner alleges that Defendants Connecticut Department of Correction ("DOC") and Helena Morris discriminated against him when they discontinued his psychiatric medication prescription. Plaintiff brings claims against both defendants under federal and state law for deliberate indifference on the basis of Plaintiff's disability (Counts One and Two) and disability discrimination (Counts Three and Four). As to Defendant Morris, Plaintiff also brings two state common law claims for aiding and abetting (Count Five) and intentional infliction of emotional distress (Count Six).

In separate motions to dismiss, Defendants move to dismiss (a) Plaintiff's Rehabilitation Act claims against DOC and against Morris in her official capacity, arguing that Plaintiff has not adequately alleged that he was discriminated against by reason of his disability; and (b) the Rehabilitation Act claims against Morris in her individual capacity, as the Rehabilitation Act does not provide for individual capacity suits against state officials. *See* Mots. to Dismiss, ECF Nos. 28 (official capacity) & 46 (individual capacity). For the reasons described below, the Court DENIES the first motion to dismiss the Rehabilitation Act claims against DOC and Morris in her

official capacity, but GRANTS the second motion to dismiss these claims against Morris in her individual capacity.

## I. FACTUAL BACKGROUND

The facts set forth in the complaint are taken as true for purposes of evaluating the motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was diagnosed with depression at Connecticut Valley Hospital in (or around) 2017. Compl., ECF No. 1 ¶ 7. Plaintiff was prescribed bupropion and had been taking this medication for several years[1] by the time he was incarcerated on October 1, 2020. *Id.* ¶¶ 6–7. Plaintiff was initially incarcerated at Osborn Correctional Institution, *id.* ¶ 6, and at DOC intake, Plaintiff was "automatically given" his prescription. *Id.* ¶ 7. Thereafter, Plaintiff was typically seen for a mental health visit every ninety days to complete bloodwork to confirm prescription compliance. *Id.* ¶ 11.

On October 10, 2023, Plaintiff transferred to Willard-Cybulski Correctional Institution. *Id.* ¶ 6. Just over a month later, on November 17, 2023, Plaintiff was called to attend an unscheduled visit with Defendant Helena Morris, DOC mental health counselor and APRN. *Id.* ¶ 8–9. During the visit, Morris asked Plaintiff why he was taking bupropion. *Id.* ¶ 10. Plaintiff responded that he was prescribed bupropion for depression, and that he had been taking it for more than six years. *Id.* ¶ 12. Morris then asked if, on occasion, Plaintiff did not take the medication. *Id.* ¶ 13. Plaintiff responded affirmatively, explaining that bupropion caused him dryness of mouth. *Id.* ¶ 13. Willard-Cybulski's central air system, which ran twenty-four hours a day, caused Plaintiff "to wake up in the middle of the night choking from dryness of the mouth with no saliva." *Id.* ¶ 14.

[1] The complaint states that Plaintiff had been taking bupropion "for [sic] some six years" both at the time of intake for his period of incarceration (in 2020), *id.* ¶ 7, and for "at least six years" at the time of a November 2023 medical appointment, *id.* ¶¶ 8–10. Because the duration of Plaintiff's prescription is immaterial to the issues in this motion, the Court merely acknowledges this point to explain its recharacterization above.

Following such experiences, Plaintiff alleges he would "take the medication the next day or two."[2] *Id.* "Defendants" had prescribed Plaintiff biotene dry mouth liquid to alleviate this symptom. *Id.*

Morris stated that Plaintiff "was taking the medication as though he were doing drugs on the street in order to get high," and displayed a "very poor and insensitive attitude toward Plaintiff." *Id.* ¶ 15. Plaintiff was offended by this comment and left the visit in lieu of confronting Morris. *Id.* ¶ 16. Plaintiff alleges that Morris's comment "demonstrated that [he] was perceived as a drug addict," *i.e.*, an individual with a disability. *Id.* ¶ 16. The day of the visit, Morris caused Plaintiff's bupropion prescription to be discontinued, which Plaintiff alleges is not recommended, as abrupt discontinuation of the prescription may cause severe depression and suicidal ideation. *Id.* ¶¶ 17, 19. Plaintiff also alleges he was not tapered off the medication in accordance with normal practice, and that he was not offered any remedy or medication substitute. *Id.* ¶¶ 18, 20. Moreover, Plaintiff alleges that he had not "previously been accused of any wrongdoing" in the forty months of taking his medication in DOC custody, including by any medical staff. *Id.* ¶ 24.

The same day, Plaintiff submitted a Health Services Administrative Remedy request, which was denied on December 6, 2023. *Id.* ¶ 21. Plaintiff alleges that bupropion is one of the DOC's "top most misused medications" and that the DOC has been pushing its mental health providers to stop prescribing bupropion and/or to try to persuade inmates to switch medications. *Id.* ¶¶ 22–23.

Plaintiff's complaint brings claims for Defendants' deliberate indifference and disability discrimination under the federal Rehabilitation Act of 1973 (Counts One and Three)[3] and Connecticut General Statutes § 46a-60 (Counts Two and Four); for Morris's aiding and abetting DOC's disability discrimination (Count Five); and for Morris's intentional infliction of emotional

---

[2] The Court acknowledges that—based on the context—Plaintiff likely intended to allege that he does *not* take the medication for a day or two after he experiences severe dry mouth symptoms.

[3] The Court construes Counts One and Three as being brought under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, although the complaint does not specify this.

distress upon Plaintiff by discontinuing the bupropion prescription (Count Six). *See id.* at 5–8. As relief, Plaintiff seeks compensatory damages and attorneys' fees. *See id.* at 8. Defendants move to dismiss Counts One and Three, the only federal law claims. *See* ECF No. 28-1 at 3; ECF No. 46-1 at 3. Plaintiff opposes. *See generally* ECF No. 29; ECF No. 48.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*,

550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

Defendants' motions to dismiss exclusively focus on Plaintiff's federal claims under the Rehabilitation Act ("RA"), Counts One and Three. As discussed below, the Court grants the motion to dismiss the RA claims against Defendant Morris in her individual capacity but denies the motion to dismiss the RA claims against the DOC and Morris in her official capacity, concluding that Plaintiff plausibly alleges that he was discriminated against based on perceived substance abuse disorder.

### A. Individual Capacity RA Claim Against Morris

At the outset, Plaintiff alleges that Morris "is sued in her individual and official capacity," ECF No. 1 ¶ 5, but clarifies on opposition to motion to dismiss that he does not bring a claim under the RA against Morris in her individual capacity, ECF No. 48 at 1–2. For the avoidance of doubt, the Court grants Morris's motion to dismiss the individual capacity RA claims, and dismisses Counts One and Three insofar as they are asserted against Defendant Morris in her individual capacity. *See Garcia v. S.U.N.Y. Health Scis Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials").

### B. RA Claim against Morris (Official Capacity) & DOC

The Court therefore proceeds to analyze whether Plaintiff adequately pleads RA claims against the DOC and Defendant Morris in her official capacity, and concludes that he does.

Section 504 of the RA requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied

the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . " 29 U.S.C. § 794(a). To establish a *prima facie* violation under the RA, Plaintiff must show that: (1) "he is a qualified individual with a disability"; (2) Defendants are subject to the RA; and (3) "he was denied the opportunity to participate in or benefit from [Defendants'] services, programs, or activities . . . by reason of his disability." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Defendants do not contest that they are subject to the RA.[4] Defendants' sole argument in their motion to dismiss is that Plaintiff's claim fails because he insufficiently alleges "that he was discriminated against by reason of his disability." ECF No. 28-1 at 3. Though this argument focuses on causation (prong three of a *prima facie* violation), identification of the disability at issue (prong one) is a necessary predicate to the analysis.

The Court briefly acknowledges that Plaintiff argues that he both actually had and was "regarded as having" a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A), (C) & (3); 29 U.S.C. § 705(9)(B). Specifically, Plaintiff argues that (1) his diagnosed, documented depression was a disability the DOC was aware of, ECF No. 29 at 3; *see also* ECF No. 1 ¶¶ 7, 12; and (2) he was "regarded as" having a substance abuse disorder, ECF No. 29 at 3–5; ECF No. 1 ¶¶ 15–16; *see, e.g.*, *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 955 (2d Cir. 2024) (finding viable RA claim where plaintiff had a substance-abuse disorder history). The Court finds that Plaintiff plausibly alleges these disabilities.

[4] The Court notes that, insofar as Plaintiff seeks damages from Morris in her official capacity or from DOC, he is seeking damages from the State of Connecticut, and Eleventh Amendment immunity could possibly shield Defendants. *See Garcia*, 280 F.3d at 107. While Congress has conditioned acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity under the RA, the State must also decide to waive its immunity by accepting federal funds. *Id.* at 113–14. As Defendants have not suggested that Connecticut has declined to waive Eleventh Amendment immunity by *not* accepting federal funds, the Court does not address the issue further.

Turning to Defendants' challenge, the Court concludes that Plaintiff also plausibly alleges that he was discriminated against based on his perceived substance abuse disorder. Crucially, Plaintiff alleges that Defendant Morris said to Plaintiff (prior to discontinuing his prescription) that "he was taking the medication as though he were doing drugs on the street in order to get high." ECF No. 1 ¶¶ 15–17. Taken as true, these facts plausibly allege that Morris—the DOC's agent—discriminated against Plaintiff by terminating his prescription medication because Morris regarded Plaintiff as having a substance abuse disorder. Because Plaintiff's allegations with respect to this theory of the RA claim surmount Defendants' limited challenge, the motion to dismiss the RA claims against the DOC and Defendant Morris in her official capacity is denied.

However, to aid the parties as they proceed in litigation, the Court notes its conclusion that Plaintiff does not plausibly allege discrimination on the basis of his depression diagnosis. Plaintiff argues that the DOC "confirm[ed] its awareness of his disability"—i.e., his depression—at intake, ECF No. 29 at 3 (citing ECF No. 1 ¶¶ 7, 12, 17) and that he was "denied continued access to mental-health treatment because of disability-based stereotyping and animus," *id.* But Plaintiff does not allege any facts to support an inference that he was discriminated against because of his depression diagnosis. Although Plaintiff alleges that Morris discontinued Plaintiff's prescription without "tapering, substitution, or clinical justification," ECF No. 1 ¶¶ 18–20, that bupropion is among the "DOC top most misused medication[s]," *id.* ¶ 22, and DOC policy encouraged mental health providers to cease prescribing it to inmates and/or to persuade them to change medications, *id.* ¶ 23, at best, these plausibly allege that Plaintiff's medication was, as Plaintiff himself articulates, discontinued for "non-individualized reasons," ECF No. 29 at 3. Plaintiff therefore alleges facts that he was denied services "for a disability," but not "*because of* a disability." *Tardif v. City of New York*, 991 F.3d 394, 406 n.11 (2d Cir. 2021) (emphasis added); *see also id.*

(cautioning against affording "plaintiffs an almost unfettered ability to re-frame claims of medical malpractice into federal claims of discrimination on the basis of disability"); *Cushing v. Moore*, 970 F.2d 1103, 1109 (2d Cir. 1992) (holding that the RA "does not create a cause of action based on a handicap that is directly related to providing the very services at issue"). The Court thus concludes Plaintiff fails to plausibly state a claim that Defendants discontinued his prescription because of his depression diagnosis.

## IV. CONCLUSION

For the reasons described herein, the Court DENIES Defendants' motion to dismiss the Rehabilitation Act claims against DOC and Defendant Morris in her official capacity, ECF No. 28; but GRANTS Defendant Morris's motion to dismiss the Rehabilitation Act claims against her in her individual capacity, ECF No. 46. The Court dismisses Plaintiff's Rehabilitation Act claims only insofar as they are asserted against Defendant Morris in her individual capacity. Defendants shall file an answer to the complaint by October 16, 2026.

**SO ORDERED** at Hartford, Connecticut, this 25th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE